DECISION AND JUDGMENT ENTRY
Sandra Barr appeals a judgment in favor of Kenneth and Karen Wolfe in a civil action resulting from the sale of a home. She assigns the following errors:
 "I. The Trial Court Erred As A Matter of Law In Finding That Defendant Kenneth Wolfe Was Not The "Builder" of The Home In Question And The Court's Alternative Finding That The Home Was Not Negligently Constructed Was Against The Manifest Weight of The Evidence."
 "II. The Trial Court's Decision That The Appellant Did Not Meet Her Burden of Proof In Proving' Appellees Fraudulently Concealed Defects In The Home At Issue Is Against The Manifest Weight of The Evidence."
Finding no merit in either of Ms. Barr's assignments of error, we affirm the judgment of the Lawrence County Court of Common Pleas.
In November 1996, Sandra Barr entered into a written contract with Kenneth and Karen Wolfe for the purchase of their home located at 205 Rockwood Avenue, Chesapeake, Ohio. The Wolfes purchased the land on which the home was built in 1993 and they began construction the same year. Mr. Wolfe chose the plans for the home from a book and marked where the footer of the home would be built. He hired contractors to pour the footer, lay concrete block and erect support beams and upper walls. Mr. Wolfe chose the type of foundation and decided to use three support beams based, at least in part, on the advice of a contractor he hired. Mr. Wolfe did the electrical work, painting, insulating and general clean-up work without professional assistance. The Wolfes resided in the home until they sold it to Ms. Barr.
At the time of the sale, the Wolfes completed a Residential Property Disclosure Form as required by R.C.5302.30. On the form, the Wolfes indicated that they knew of no "movement, shifting, deterioration, material cracks (other than visible minor cracks or blemishes) or other material problems with the foundation, floors, or interior/exterior walls." Prior to the sale, Ms. Barr and her fiance, Allen Arbogast, had free access to the home and looked at it several times after initially touring it during an open house. Ms. Barr had previously purchased three houses and had three houses built. She also knew that she was free to hire an inspector to examine the home but chose not to.
Ms. Barr testified that she asked Mr. Wolfe if he was having any foundation problems with the home and he responded that he was not. She also testified that Mr. Wolfe did not inform her that he had done any re-mortaring or re-pointing of the basement walls and no cracks were visible when she purchased the home.
Ms. Barr did notice that the rear basement wall appeared "fuzzy." Mr. Wolfe acknowledged that there had been a water leakage problem where the water service line came into the house and agreed to repair the problem. An addendum to the property disclosure form was added which indicated this problem. Mr. Wolfe installed an interior drainage system to rectify the water leakage problem.
Ms. Barr and Mr. Arbogast moved into the home in January 1997. In March 1997, a flood affected the area and four inches of water accumulated in the basement of the home. In April 1997, a Federal Emergency Management Agency ("FEMA") inspector examined the home and found no damage. A short time later, Ms. Barr noticed a crack in the basement wall and, upon further inspection, discovered cracks on both the interior and exterior walls of the home, including cracks in the walls on the second and third floors of the home.
After discovering these cracks, Ms. Barr hired Mark Pennington, a civil engineer, to examine the foundation of the home. Mr. Pennington testified that the front wall of the home had settled downward as a result of the home being constructed on improper fill. As the fill consolidated, the weight of the home caused the wall to drop vertically and to tilt outward, causing the cracks to open up. Mr. Pennington also testified that the back wall tilted in at the top as a result of the earth pressure behind it. Mr. Pennington testified that there was not a proper drainage system behind the wall and the wall was not reinforced. He found no evidence of concrete fill in the wall. Due to the lack of a drainage system and the failure to reinforce the wall, the dirt became too heavy from the water and exerted pressure on the wall. The tilting caused one of the steel support beams to punch through the top of the rear wall.
Mr. Pennington also testified that the cracks had previously been repaired with mortar and painted over. He opined that the flood had not caused the damage to the home and that the cracks existed prior to the flood. Mr. Pennington testified that he found no evidence of slippage and does not believe vibrations from heavy vehicles caused the damage.
Allen Arbogast, Ms. Barr's fiancé, testified that he did not observe any cracks prior to Ms. Barr's purchase of the home. In April 1997, he began to notice cracking. In April and May 1997, trucks traveled down the driveway carrying dirt in order to fill up the bank by the river. Mr. Arbogast stated that he has not felt any vibrations since moving into the house.
Jerry Denning, a contractor, testified that several of the cracks had been repaired with mortar or construction adhesive. Mr. Denning testified that when the mortar and adhesive were first applied they would blend into the wall, but over a period of time would reopen if the walls were still moving. Furthermore, the patched cracks would become more visible over time. Mr. Denning also testified that the footer was laid properly but the front and rear walls of the home must be replaced at a cost of approximately $56,961.
Kenneth Wolfe testified that when he and his wife purchased the land on Rockwood Avenue, an old house was located on the lot where the existing house was eventually built. The original house was partially torn down and the remainder burned. The Wolfes built the new home on the same location and did not place any fill on the site. A retaining wall, holding back the bank below Route 7, also existed prior to the new home's construction. Mr. Wolfe left the retaining wall in place and built the residence below the wall. Dave Cornwell poured the footer after Mr. Wolfe outlined where it should be located. After the block was laid, the back wall was filled with concrete and steel rebar as recommended by the brick masons who laid the block. Frank Cornwell built the upper two stories and helped Mr. Wolfe determine where the steel beams should be placed. A drain system was installed and gravel and dirt were placed between the retaining wall and the basement wall. After finishing the home, Mr. Wolfe added an additional drain. He testified that he does not know if the drain is blocked but it is now covered by dirt and grass as a result of Ms. Barr adding dirt to the bank. Mr. Wolfe also testified that the area is prone to slides and that vibrations from traffic can be felt in the home.
Mr. Wolfe further testified that he'd discovered settling cracks in the basement walls and hired a firm to repair the cracks with mortar in 1995. Mr. Wolfe testified that settling cracks are normal when building a structure and generally just require that the cracks be re-pointed (filled in with mortar). Mr. Wolfe further testified that he told Ms. Barr and Mr. Arbogast about the stair step cracking and the repairs made as a result. Mr. Wolfe stated that he does not know how there was paint in the cracks as he did not repaint the home after it was built. He testified that he was not aware of any foundation problems or defects when he sold the house and he did not withhold any information from Ms. Barr.
Eldon Maynard and his son, Gary, testified that they are brick masons who laid the block for the home. Eldon Maynard testified that there were no cracks in the mortar when he left but that it is common to see stair step cracks in mortar which would need to be re-pointed. He opined that slipping of the hill and vibrations caused the wall to push inward. Gary Maynard testified that he and his father advised Mr. Wolfe to use twelve-inch blocks because of the pressure exerted on the wall and that Mr. Wolfe followed this advice.
Steve Newman, Ms. Barr's next door neighbor and a longtime friend of Mr. Wolfe's, testified that he removed the debris from the old house located on the property. He further stated that he did not place any fill where the new house is located and did not see any fill there when the footer was poured. Mr. Newman also acknowledged that he feels vibrations in his home.
Brenda Taylor, the real estate agent who sold the house, testified that she noticed at least one crack in the interior basement wall when she was selling the house. She also testified that either Ms. Barr or Mr. Arbogast asked Mr. Wolfe if there were any problems with the foundation and that he replied that there were no problems except what was visible. Ms. Taylor further testified that either Ms. Barr or Mr. Arbogast discussed mortar cracks with Mr. Wolfe though she was unsure whether the discussion was pertaining to one crack in particular or a general discussion. Ms. Taylor urged Ms. Barr to have a home inspection performed but she declined.
Karen Wolfe testified that the mortar did not blend in where the cracks had been re-pointed in the basement. She recalled discussing the cracks with Ms. Barr and Mr. Arbogast. Mrs. Wolfe also testified that she did not consider the cracking to be structural damage or a defect and that there was no beam protruding through the wall when the Wolfes moved from the residence.
On rebuttal, Allen Arbogast testified that he never had a conversation with the Wolfes regarding any patched cracks in the mortar. He further testified that dirt was not added to the bank until after the problems with the house were discovered and Mr. Pennington first evaluated the house.
Following the trial, the court ordered both parties to submit briefs supporting their positions. The trial court issued a decision in favor of appellees. Appellant then requested findings of fact and conclusions of law. The trial court complied with this request.
In her first assignment of error, Ms. Barr contends that the trial court erred in finding that Kenneth Wolfe was not the builder of the home she purchased. She further argues that the trial court's alternative finding, that the home was not negligently constructed, was against the manifest weight of the evidence.
An appellate court will not reverse a trial court's judgment so long as it is supported by any competent, credible evidence going to all of the essential elements of the case.Sec. Pacific Natl. Bank v. Roulette (1986), 24 Ohio St.3d 17,20; C.E. Morris Constr. Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 280. Under this highly deferential standard of review, a reviewing court does not decide whether it would have come to the same conclusion as the trial court. Rather, we are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate factual conclusions. We are guided by the presumption that the trial court's factual findings are correct because of the knowledge that the trial judge "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,79.
"A duty is imposed by law upon a builder-vendor of a real-property structure to construct the same in a workmanlike manner and to employ such care and skill in the choice of materials and work as will be commensurate with the gravity of the risk involved in protecting the structure against faults and hazards, including those inherent in its site. If the violation of that duty proximately causes a defect hidden from revelation by an inspection reasonably available to the vendee, the vendor is answerable to the vendee for the resulting damage." Mitchem v. Johnson (1966), 7 Ohio St.2d 66, paragraph three of the syllabus.
In the findings of fact, the trial court found that Kenneth Wolfe was not a builder-vendor as discussed inMitchem. Specifically, the trial court found that Mr. Wolfe served as a general contractor but consulted with and hired sundry artisans to do the bulk of the construction work. The trial court further found that Mr. and Mrs. Wolfe intended to remain in the house indefinitely when they built the house but, due to financial problems, were forced to sell the house. The trial court ultimately concluded, however, that this determination was not material because the home was built in a workmanlike manner and neither shoddy workmanship nor inferior materials were used in the building of the home.
We agree with the trial court's legal conclusion that if Mr. Wolfe constructed the home in a workmanlike manner and utilized the requisite care and skill in the choice of materials for the type of structure and location, his status is immaterial, i.e. he cannot be held liable for violating the duty a builder-vendor owes to a vendee. Therefore, we will first consider whether the record contains some evidence to support the trial court's factual finding that the home was built in a workmanlike manner and no shoddy workmanship or inferior materials were used.
Ms. Barr relied primarily on Mark Pennington's testimony to prove that Mr. Wolfe had not constructed the home in a workmanlike manner. In sum, Mr. Pennington testified that the structure failed because it was built on improper fill and because the home was constructed such that there is no lateral support at the top of the back wall. Most importantly, the back wall was not reinforced. Ms. Barr argues that Mr. and Mrs. Wolfe presented no direct evidence to contradict Mr. Pennington's testimony as to why the home was damaged.
We note, however, that Mr. Wolfe testified that he relied on the advice of Frank Cornwell, a respected contractor in the area, when determining where to place the steel support beams. Mr. Wolfe also received advice regarding the rear basement wall from Eldon and Gary Maynard. Mr. Newman and Mr. Wolfe both testified that there was no fill on the ground when the footer was poured. Mr. Wolfe and his father testified that the back wall was reinforced with concrete. Mr. Wolfe also testified that he installed a drainage system behind the back wall. Therefore, if the testimony of Mr. Wolfe and his witnesses is credited, there is sufficient evidence to refute Mr. Pennington's conclusions and to support a finding that the home was built in a workmanlike manner. There is also sufficient evidence to support the trial court's finding that such care and skill as are commensurate with the risk involved in protecting the structure were used in building the home.
The Wolfes presented several theories as to the cause of the damage, i.e. slippage, vibrations from traffic and damage from the flood. We note, however, that the Wolfes were not required to prove the actual cause of the damage. There is ample support in the record for the trial court's finding. We cannot substitute our judgment for the trial court's and, having found that some evidence supports the trial court's finding that the home was built in a workmanlike manner, we need not determine whether Mr. Wolfe was a builder-vendor. We overrule Ms. Barr's first assignment of error.
In her second assignment of error, Ms. Barr argues that the trial court's decision that she did not prove that the Wolfes fraudulently concealed defects in the home is against the manifest weight of the evidence. The trial judge concluded that Ms. Barr failed to meet her burden of proof because the doctrine of caveat emptor or buyer beware applied in this action and the Wolfes did not create a fraud or conceal latent defects in the residence.
"The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." Layman v. Binns
(1988), 35 Ohio St.3d 176, syllabus. Under caveat emptor, buyers are responsible for discerning patent defects in the real estate. Id. at 177. Without the doctrine of caveatemptor, "nearly every sale would invite litigation instituted by a disappointed buyer." Id.
To avoid operation of caveat emptor, the buyer must first show that the condition of which she complains was not openly observable at the time of purchase. Moody v. Blower (April 19, 1999), Athens App. No. 98CA28, unreported. Ms. Barr testified that she and Mr. Arbogast toured the home extensively and did not notice any cracks in the walls. She further testified that she did not notice any cracks until April 1997. However, the Wolfes and Ms. Taylor testified that Ms. Barr discussed the cracks in the basement with the Wolfes. Further, Ms. Taylor testified that she noticed cracking in the mortar joints in the basement when she was showing the house. Thus, although there was some evidence to the contrary, there was competent, credible evidence to support the trial court's finding that the cracks in the basement wall were known to Ms. Barr when she purchased it.
The second factor in the caveat emptor analysis examines whether the buyer had an unhindered opportunity to inspect the premises she purchased. Ms. Barr testified that she toured the home extensively prior to purchasing it. Although the basement lighting was poor, Mr. Arbogast obtained a flashlight from his car so that the basement could be inspected more thoroughly. Additionally, the property disclosure form and Ms. Taylor encouraged Ms. Barr to obtain an inspection of the property. Therefore, the evidence supports the trial court's finding that Ms. Barr had an unhindered opportunity to inspect the walls.
Finally, where a defect is observable and the buyer has the opportunity to discover it without concealment or hindrance by the seller, the buyer may still recover if she can prove that the seller committed fraud. Layman, supra, at syllabus. To support a fraud claim, a complainant must prove: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167,169. If the buyer merely proves that she relied on "misstatements and misrepresentations by the vendor not so reprehensible in nature as to constitute fraud," the doctrine of caveat emptor will preclude her claim. Layman, supra, at 177.
Ms. Barr asserts that the Wolfes committed fraud in that they affirmatively stated on the residential property disclosure form that there were no problems with the foundation and no material cracks. Further, when Ms. Barr asked Mr. Wolfe if there were any foundation problems, he responded that there were not. However, Mr. Wolfe testified that he believed the cracks were settlement cracks that needed to be re-mortared, not problems with the foundation, and that Ms. Barr observed the cracks. Further, Mrs. Wolfe testified that the beam was not protruding out of the house at the time they moved and there were no cracks in the second or third floor walls. Based on this testimony, the trial court found that the Wolfes did not conceal any known defects from Ms. Barr. Thus, although there was some evidence to the contrary, there was competent, credible evidence to support the trial court's finding that the Wolfes disclosed the re-mortaring that had been done to the home, but neither knew of nor concealed any structural problems from Ms. Barr.
There is competent, credible evidence to support the trial court's factual findings. Therefore, the trial court did not err in determining that the alleged defects in the home were not latent and in concluding that Ms. Barr failed to overcome the defense of caveat emptor.
We overrule appellant's assignments of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.
For the Court
 BY: _________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutesa final judgment entry and the time period for further appealcommences from the date of filing with the clerk.